## PROSECUTION FOR TORTURING AND UNNECESSARILY ABUSING A DOG.

Common Pleas Court of Licking County.

JOHN B. MICK v. THE STATE OF OHIO.

Decided, September Term, 1903.

*Dogs—Legislation with Respect to—Provisions Against Cruelty to Animals Applicable to—Prosecution for Torturing—Averments of Affidavit—Burden of Proof—Sections 6951, 4212-1 and 4212-2.*

The dog is an animal within the meaning of Section 6951, providing penalties in cases of cruelty to animals, and one torturing or unnecessarily abusing a dog is liable under this statute, notwithstanding the dog had not been brought within the realm of property by returning him for taxation and paying the tax on him when due; and the statutory provisions against dogs running at large do not relieve against prosecutions for torture and unnecessary abuse.

*S. L. James* and *Kibler & Kibler,* for plaintiff in error.
*Smythe & Smythe,* contra.

SEWARD, J. (orally).

This case comes into this court upon a petition in error by John B. Mick v. the State of Ohio, wherein he complains that there were errors committed by the justice of the peace in the trial·of John B. Mick upon a charge of torturing and unnecessarily beating a dog.

The dog has been in every Legislature for a number of years, not as a member but as a recipient of its mercy or a subject of its punishment; and I have gone over the legislation for a number of years in relation to the dog to determine what his rights and remedies are.

The Revised Statutes of 1880, being the authorized revision, contains Section 7008, which provides that the owner or harborer of any animal of the dog kind who permits such animal to be at large, away from the premises occupied by him, unaccompanied by any person, shall be fined five dollars, and any person may kill any such animal so found running at large.

This legislation was passed in the '70's, as I now recollect, and was carried into the Revised Statutes by the commission appointed to revise the laws, and remained in that shape until April 24th, 1890, when the dog received more attention at the hands of the Legislature, and Section 7008 was amended by adding to that section as it then stood the words: provided that if any person, in attempting to kill such animal so found running at large, fails to kill and wounds the same, he shall not be liable to prosecution under Section 6951. That is the section under which the state of Ohio claims that the plaintiff in this case was prosecuted before the justice; while the plaintiff in error claims that he was prosecuted under the act of April 9, 1898, providing that whoever maliciously kills or injures a dog is guilty as for the malicious destruction of property, the same as is provided in Section 6863. This section provided that a dog should be considered as property, and provided that whoever stole or enticed the dog away from the owner's premises should be held guilty as for larceny, and that whoever ma-

liciously killed or injured him should be held guilty as for the malicious destruction of property.

The section of the statute now governing in the way of dogs is Section 4212-1-2, and reads as follows:

"Section 4212-1. [*When dog to be considered properly.*] Any animal of the dog kind listed and valued for taxation as other (personal) property, and due return thereof made by the owner or harborer to the assessor or county auditor, and the per capita tax on such animals in addition to the proper tax on any valuation which may have been placed on such animal by the owner or harborer thereof shall have been paid when due, shall be considered as property, and such animal shall have all the rights and privileges and be subject to the same restraints as are provided by law for other live stock: provided that no recovery shall be had for the malicious and unlawful killing of such animal, in excess of double the amount for which any such dog is listed for taxation; provided, further, that nothing in this section shall be so construed as to make it unlawful for any person to kill any animal of the dog kind that chases, worries, injures or kills any sheep, lamb, goat, kid, domestic fowl, animal or person; and provided, further, that if any person in attempting to kill such animal so running at large, fails to kill, and wounds the same, he shall not be liable to prosecution under Section 6951 which provides against cruelty to animals.

"Section 4212-2. Any animal of the dog kind that chases, worries, injures, or kills any sheep, lamb, goat, kid, domestic fowl, animal or person, may be killed by any person at any time or place. And the owner, owners or harborers of any animal of the dog kind that chases, worries, injures, or kills any sheep, lamb, goat, kid, animal or person, shall be jointly and severally liable to any person so damaged to the full amount of the injury done; and the court or justice, before whom the recovery is had for any such injury, shall declare the animal found to have occasioned the injury to be a common nuisance and order the defendant to kill or cause to be killed such animal within twenty-four hours after the rendition of the judgment; or the court or justice may order any constable or marshal or sheriff to kill such animal."

I might say that the State of Ohio claims that this prosecution was brought under Section 6951, and it might be well to read that section, because we have to determine whether the case was brought under that section, and properly brought under that section. That section reads as follows:

"Whoever overdrives, overloads, tortures, deprives of necessary sustenance, or unnecessarily or cruelly beats, or needlessly mutilates or kills any animal, or impounds or confines any animal in any place and fails to supply the same during such confinement with a sufficient quantity of good, wholesome food and water, or carries in or upon any vehicle, or otherwise, any animal in a cruel or inhuman manner, or who keeps cows or other animals in any inclosure without wholesome exercise and change of air, feeds cows on food that produces impure or unwholesome milk, or abandons to die any old, maimed, sick, infirm or diseased animal, or works the same, or, being a person or corporation engaged in transporting live stock, detains such stock in railroad cars, or in compartments for a longer continuous period than twenty-four hours after the same are so placed, either within or beyond this state, without applying the same with necessary food, water and attention, or permits such stock to be so crowded together as to overlie, crush, wound, or kill each other, shall be fined not more than two hundred nor less than five dollars, or imprisoned not more than sixty days, or both."

Now, looking at the averment of the affidavit alleging that the dog was listed for taxation. That was not necessary under this provision of the statute, but that allegation is made, and that is the reason that the plaintiff in error claims that it is prosecuted under the section which I have read, which provides that a dog shall be listed for taxation, and if he was so listed, that he became property; and it provides also that the tax on him must be paid before the owner of the dog could recover compensation for his loss by being killed by anybody. It is claimed on the part of the plaintiff in error that this section does not apply, because a dog is not an animal such as is provided for in this section. The court does not think that is tenable; the court thinks he is an animal, and other things being equal he would come under this provision of the statute. It provides not only for animals used in the daily business or avocation of life, but all animals, whether domestic or otherwise. A person would have no right to tie up a dog and leave that dog without food, knowing it was tied up and doing it for the purpose of having it starve to death. It is for the purpose of preventing cruelty to animals that this section was passed.

But, the testimony shows that this dog was at large in the streets of the city, and shows that he had been at large, and the section of the statute governing in this respect, as it now exists is Section 4212 as it now appears in the Revised Statutes. It will be found in Year Book, Vol. 94:

"Any animal of the dog kind listed and valued for taxation as other (personal) property, and due return thereof made by the owner or harborer to the assessor or county auditor, and the per capita tax upon such animals in addition to the proper tax on any valuation which may have been placed on such animal by the owner or harborer thereof shall have been paid when due, shall be considered as property, and such animal shall have all the rights and privileges and be subject to the same restraints as are provided by law for other live stock."

It is claimed by the plaintiff in error that this dog is not property because the tax upon him was not paid. That is true. He would not be property unless he had been returned for taxation, and the tax was paid. But, does the fact that the dog is not property prevent Section 6951 from having effect where the dog is tortured or unnecessarily beaten and injured? The court thinks not. If he is unnecessarily tortured, the person would be liable under Section 6951, other things being equal.

Now, it appears clearly to the mind of the court that this dog was at large, without being accompanied by its owner. I know it is claimed that this was his old home, and it is said by some one that a dog will follow its owner wherever he may go; he may be a man of affluence and be reduced to penury, but the dog will follow him to a hovel and there lie at his door. That is true, but then the owner must take care of the dog. He must not permit the dog to run at large. If he does permit it to run at large, any person has a right to kill him.

The testimony shows that this dog was in Mick's yard on the 12th of April; that Mrs. Mick took hold of him and tried to put him out of the yard, and did not succeed. The dog rebelled; he did not want to go out of the yard. She had him by the collar, trying to lead him out; Mr. Mick told her to leave him alone; that the dog might bite her; and there is one witness only who testifies that she saw Mick kick this dog, and that he

raised him clear off of the ground. It is testified that the dog would weigh 150 pounds. This witness lives some distance east of Mick's house, across the street; afterwards she took the stand and said that she did not mean that he lifted the whole dog off of the ground, but a part of it. Now, Mick testified that he opened the gate with his right hand and pushed him out with his foot, against the hind part of the dog. Mick is corroborated by two witnesses who were on Mick's porch at the time, and by some neighbors. They say that they saw all that he did to the dog. But the dog is found in a bad condition. There is some difference between the witnesses as to where he was hurt. Some of the witnesses say on the right side, and some on the left side. Dr. Jones says his testicles were badly swollen, etc. But on the 11th inst. the dog was taken about two miles east of Newark by the father-in-law of the owner of the dog, where he stayed and was there about 11 o'clock on Sunday morning, and that was the last that was seen of him, there, but he was in Mick's yard about noon or shortly afterwards.

If the court is to believe this testimony—that Mick simply took hold of the gate and put his foot against his hind part and pushed him out of the gate—he could not have effected any such injury as is claimed to have been inflicted upon that dog. The dog was not at home. Mick had a right to put him out of his yard. He had a right to use the necessary force to eject him from his yard. The dog hadn't any business in that yard. If Mick used only such force as was necessary to eject him from the yard, then he would not be liable either civilly or criminally. The dog might have been hurt in some other place, on some other occasion than this time, and the burden was on the state to show to the justice, beyond a reasonable doubt, that what Mick did there to that dog caused the injury which the dog was found to have sustained afterwards. Dr. Jones was not called for some days afterwards. There is some testimony to show that the dog was out on the street before Dr. Jones was called to see him. That is disputed. The testimony is all in dispute about that feature of the case; but the law, as the court has read from this section of the statute—Section 4212-1-2, is the law governing dogs in this respect, including Section 6951, which provides for

the punishment of a person who tortures or abuses an animal.

Now, the court does not think that Mr. Mick could have been held to this charge, unless he used more force than was necessary to eject that dog from that yard; and the preponderance of the testimony, as the court views it, was clearly that he did not use any more force than was necessary. It is said by some of the witnesses that he threw stones at the dog, but no one says that he hit him; not anybody; and he says he simply threw some pebbles and told the dog to go home. It is in evidence that the dog howled, and went across the street, and was in other yards and came back there. The court does not think that this testimony shows, beyond a reasonable doubt, that Mick inflicted the injury which was shown to have caused the dog the pain that he seemed to have suffered afterwards. This must be shown beyond a reasonable doubt, and the court thinks clearly that there is a very reasonable doubt here as to whether Mick inflicted this injury.

I very much doubt whether this affidavit is good, unless it alleges that the dog was not at large. I think if the dog was at large Mick would have a right to kill him, and I think the affidavit should state and the burden is on the state to show that the dog was not at large at the time the injury was inflicted.

The judgment will be reversed.